

Re:   <u>DeSoto v. City of N.Y., et al.</u>, No. 1:16-cv-06829-NRB

Your Honor,

    I represent Plaintiffs in the above-captioned Section 1983 police misconduct litigation.  I write to request the Court's help in resolving a discovery dispute which the Parties have conferred about at length, and which I raised with the Court during a July 5, 2017, telephone conference.

    **I.  Brief factual background.**

    The following facts are drawn from Plaintiffs' complaint and the record to date.  For the sake of expedience and because Plaintiffs' deposition transcripts have not yet been produced, I have not appended Exhibits, but I will provide them on the Court's request.  In addition, as to the Defendants' personnel matters, I will speak only in broad terms so as not to identify any one individual.  During the July 5, 2017, conference, the Court directed Defendants to produce the Defendants' personnel indices to Chambers for <u>in camera</u> review in connection with this application.

    On March 14, 2015, the DeSoto family went to a salsa club and celebrated their matriarch Sandra DeSoto's ("Sandra") birthday.  Sandra is Plaintiff Jesus DeSoto, Sr.'s ("Senior") wife and Plaintiff Jesus DeSoto, Jr.'s ("Junior") mother.  The following people were among the family and friends who had gone to celebrate and dance salsa:  Senior; Sandra; Junior; Rafael DeSoto ("Rafael") and his girlfriend Stacy; and two of Mrs. DeSoto's female friends, Mildred and Rubia.

    When the salsa club closed, the DeSoto family walked out together.  There was an extremely large police presence outside.  Rafael and Stacy were the first of the group to leave and, almost immediately, Defendants seized Rafael.  On information and belief, Defendants mistook Rafael for the person who they were already actually on the scene to find in response to a complaint.  At the time Defendants seized Rafael, Rafael and Stacy had literally just stepped out of the salsa club.  There was no gap in time between the two events.  Rafael was simply grabbed.

    When Senior stepped onto the sidewalk (he testified that the entire group of Sandra's family and friends were walking out one right after the other because the salsa club closed), he looked to his right and saw Rafael on his back on the ground with Defendants standing above him.  Senior approached and told Defendants that Rafael was his son.  It should be noted that Senior, whose serious heart condition prevents him from consuming alcohol, was wholly within his five senses.  One of the Defendants—on information and belief, Defendant Thomas or



Defendant Staples—responded to Senior's question by sucker punching him in the face, breaking Senior's dentures.

By this time the rest of the DeSoto group was on the sidewalk. Defendants arrested Junior and Mildred for protesting, too, and Junior also suffered injuries. Mildred was later released. At the precinct, Senior asked to go to the hospital. In addition to the injuries he suffered while being assaulted by certain Defendants, the stress of the situation made him feel ill and he was worried that he might have some sort of myocardial injury. One sympathetic officer and one unsympathetic officer accompanied him to Presbyterian Hospital. The unsympathetic officer, knowing that Senior's facial and other injuries would be recorded at the hospital, kept trying to convince him to change his mind because it would delay his court appearance and caused him to remain incarcerated longer. The sympathetic officer told Senior not to listen and to seek medical attention if he felt he needed it, out of an abundance of caution. In the end, because Senior feared remaining in custody, he declined to be admitted to hospital, whereupon he was delivered directly to Central Booking.

Rafael was charged with misdemeanor "attempting to assault" and harassing an "unidentified woman." Defendants claim that he did this by striking her in the head multiple times with his fists. Defendants claim that they stopped Rafael as he did this, but that he then broke free and continued to hit the unidentified woman in the head with his fists more times. This was entirely false. First, Rafael and Stacy had just walked out of the salsa club when Defendants grabbed Rafael. There was no time for him to assault anybody, let alone in a two-stage process. Second, Rafael and Stacy were together that evening, and Stacy visited Rafael in the precinct. It is unclear who the unidentified woman would have even been; the police have not said and there is no statement by anyone against or even about Rafael. A state court later dismissed all charges.

Senior was charged with felony assault, OGA and resisting arrest, none of which were true. Central among the allegations against him in his arrest report was that he "threw" Defendant Myers to the ground. Notably, Senior's arrest report does not mention that his teeth were broken by an officer's fist—the Force Used section says "None." Apparently, the allegation of Senior assaulting a police officer was so dubious, or maybe Senior's facial injuries so grotesque, the state court judge ROR'd him at arraignment. It took Defendant Myers thirty (30) days to submit a line-of-duty injury report relating to the incident. The DA's Office never presented the case to a grand jury and all charges were dismissed.

Junior was charged with felony assault, OGA and resisting arrest, too. Central among the allegations against him in his arrest report was that he punched Defendant Staples in the face. This was not true. Depending on the document in the record to date, Defendants allege (1) Junior hit Staples in the back of the head; (2) Junior hit Staples in the face; (3) Junior hit Staples on the left side of his head; or (4) Junior hit Staples on the right side of his temple. Defendant Staples sought no medical attention for the incident, presumably because his injury would have been hard for a doctor to examine as it was continuously migrating to different places. The state



court judge ROR'ed Junior at arraignment, the DA's Office never presented the case to a grand jury, and all charges were dismissed.

**II.     CCRB and IAB Records**

Plaintiffs have requested Defendants' personnel files relating to similar incidents in the past.  Defendants have objected.  As a preliminary matter, and as the Court will see when it reviews the personnel indices that it ordered Defendants to provide for in camera review, the CCRB and IAB-related indices in production do not provide the information necessary to meaningfully argue relevance because the descriptions of the events are scant but, more importantly, their dispositions after investigation are not merged.  Although complaints of Defendant misconduct are logged on certain of those central indices, once they were referred to specialized investigative units, the results of those investigations are never integrated with the mother document.

Assuming that at some point Defendants share the dispositions and findings, the reason the substantiated and unsubstantiated files are relevant is because certain Individual Defendants have an extraordinary number of force and/or prisoner injury allegations against them.  The Court will be able to readily see who these Individual Defendants are during in camera review, but I note here that one Individual Defendant faced roughly eleven allegations of unnecessary force and prisoner injury while in NYPD custody from 2013 through 2015 alone.  DEF590-593.  Still more such complaints were filed against this Defendant between 2009 and 2012.  DEF587-589.  Yet another Individual Defendant has roughly ten allegations relating to unnecessary force and prisoner injury while in NYPD custody from 2013 to 2015 as well.  DEF583-586.  None of the findings or dispositions for any of these events are merged with the indices.

I should note here that I find something perverse in Defendants' argument that it would be unduly burdensome for them to produce related discovery.  It is a sad irony that Defendants invoke their apparently chronic unconstitutional dealings with the people of New York as having created so much paper it will take some time to make sense of it.  In an effort to establish Plaintiffs' good faith in making these discovery requests, I note that not all of the Defendants would suffer this "burden" to the same extent, which circumstantially shows that the ones who have it, may have earned it.

Once Defendants provide information about findings and dispositions for these files, I ask for the production of the files corresponding to both substantiated and unsubstantiated records, and I argue that they are relevant to Plaintiffs' claims of individual liability against the Defendant Officers, particularly the two with the extraordinary number of force and injury complaints in their personnel records.

Courts in the Second Circuit regularly permit discovery of defendant officers' substantiated and unsubstantiated IAB and CCRB files relating to misconduct allegations similar to those alleged in the complaint.  See, e.g., Young v. City of N.Y., No. 10 Civ. 1701 (RMB) (THK), 2010



WL 3938372, at *1 (S.D.N.Y. Oct. 7, 2010); Gibbs v. City of New York, No. 06 Civ. 5112 (ILG)(VVP), 2008 WL 314358, at * 1 (E.D.N.Y. Feb. 4, 2008); Zhao v. City of New York, 07-CV-3636 (LAK)(MHD), 2007 WL 4205856, *1(S.D.N.Y. Nov. 21, 2007); Kitevski v. City of New York, No. 04 Civ. 7402 (RCC)(RLE), 2006 WL 680527, at *4 (S.D.N.Y. Mar. 16, 2006); Barrett v. City of New York, 237. F.R.D. 39, 40–41 (E.D.N.Y.2006); Pacheco v. City of New York, 234 F.R.D. 53, 55 (E.D.N.Y. 2006); Bradley v. City of New York, 04-CV-8411 (RWS)(MHD), 2005 WL2508253 (S.D.N.Y. Oct. 3, 2005).

  Rather than simply rely on those precedents, I will explain why the production of the unsubstantiated files in particular—it is my impression that Defendants' obligation to produce substantiated files is not disputed—is reasonably likely to lead to the discovery of admissible evidence relating to Plaintiffs' individual-liability claims.  First I note that an "unsubstantiated" finding is reached where the fact finder "finds there is insufficient evidence to determine whether an act of misconduct did or did not occur."  Reyes ex rel. Reyes v. City of N.Y., No. 00 Civ. 2300 (SHS), 2000 WL 1528239, at *2 n. 2 (S.D.N.Y. Oct. 16, 2000) (discussing CCRB unsubstantiated findings); see Floyd v. City of N.Y., 959 F. Supp.2d 540, 617 (S.D.N.Y. 2013). This is not the same as where an officer is exonerated of some wrongdoing or where an allegation is unfounded.  Thus, assuming, arguendo, that one or more unsubstantiated files reveal that complainants have reported that an Individual Defendant committed misconduct of a similar nature to the misconduct alleged here, Plaintiffs can speak to those complainants and, depending on the evidence collected, Plaintiffs can make a motion to admit those complainants' testimony at trial under FRE 404(b) to prove Defendants' intent, absence of mistake, or lack of accident.  Fed. R. Evid. 404(b).  See Frails v. City of N.Y., 236 F.R.D. 116, 117 (E.D.N.Y. 2006) (stating that unsubstantiated files are likely to lead to the discovery of admissible trial evidence and ordering their production); Pacheco v. City of N.Y., 234 F.R.D. 53, 54-55 (E.D.N.Y. 2006) (stating the same with respect to unsubstantiated files relating to allegations of similar misconduct because the plaintiff "should be given an opportunity to seek out the witnesses to the other allegations … and produce them at trial if they have evidence that would tend to prove the defendants' intent").

  As just one example of a plaintiff's successful use of an officer's prior misconduct in an excessive force case to prove pattern, intent, absence of mistake, etc., in a Section 1983 excessive force case, in Ismail v. Cohen, 899 F.2d 183, 189 (2d Cir. 1990), the Second Circuit affirmed the district court's admission in evidence of a defendant officer's participation in a similar force incident shortly after the incident that was the subject of that litigation.  Here, due to the number of incidents involving similar allegations of misconduct against at least two of the Officer Defendants, I request that the Court permit my clients the unsubstantiated files in discovery so that they may have the opportunity to make the same case that the plaintiff in Ismail and other cases like it were able to make.

  As I noted briefly above, Defendants have argued that producing the unsubstantiated files would be unduly burdensome.  Before I discuss this in greater detail, I again argue that the only



reason this is so is because the two Individual Defendants in particular have so very many allegations of force- and injury-related misconduct.  Next, it should be noted that what I am here asking for what amounts to two years' worth of unsubstantiated files in the instance of one of the more prolific Individual Defendants, and seven years' of records in the instance of the other, which many courts—and indeed, the SDNY's Section 1983 plan—view a ten-year period as having a close-enough nexus to an incident challenged in a federal civil rights action. Furthermore, Defendants' production of the files need not be burdensome.  The Parties have a Confidentiality Order in place for the sensitive handling of material such that Defendants need not perform any redactions.  In fact, the whole point of the exercise is that there should be no redactions so that Plaintiffs can properly explore the files.  In Phillips v. City of N.Y., 277 F.R.D. 82, 84 (E.D.N.Y. 2011), which involved a § 1983 action alleging false arrest, false imprisonment, malicious prosecution, and assault, the defendants produced CCRB and IAB records that were redacted to exclude the names and other identifying information of complainants and other witnesses.  The Phillips court found the defendants' redacted production to be improper, because "[t]he information in those records cannot lead to admissible evidence unless the plaintiff's counsel is able to offer testimony from those complainants and other witnesses at trial…" 277 F.R.D. at 84.  Accordingly, the court ordered defendants to produce un-redacted records that provided the names and contact information of the CCRB and IAB complainants.  See Young, 2010 WL 3938372, at *3; Zhao, 2007 WL 4205856, at *2; Pacheco, 234 F.R.D. at 55 (allowing the production of the names of other IAB and CCRB complainants: "[T]he plaintiff should be given an opportunity to seek out the witnesses to the other allegations of misconduct…").

     Assuming, arguendo, that the Court finds the proportionality objection remains available to Defendants despite the Confidentiality Order, the limited time period that Plaintiffs request covers, and Defendants' own agency in creating the burden they are complaining about, its substance is still not properly invoked.  Proportionality concerns look to factors such as (1) "the importance of the discovery in resolving the issues in the case," (2) whether the discovery is "unreasonably cumulative or duplicative," and (3) whether the discovery is likely to needlessly cause a party "embarrassment."  Creighton v. City of N.Y., No. 12 Civ. 7454 (PGG) (DF), 2016 WL 1178648, at *1 (SDNY Mar. 17, 2016) (discussing Fed. R. Civ. P. 26(b), (c)).

     Taking these factors in turn, I argue that the records are important to the resolution of the case because the officers' records are indisputably relevant to the case and may contain information admissible at trial for reasons explained, infra.  See, e.g., Stern v. Shammas, 2015 WL 4530473, at *9 (EDNY July 27, 2015) (admitting certain evidence from an officer's disciplinary record at trial pursuant to FRCP 404(b)(2) and discussing how the plaintiff might move to use still other records at trial pursuant to FRCP 608(b)).  Next, production of the files would not be "cumulative or duplicative" because Defendants have never produced any of the information before, which is why Plaintiff is requesting that they do so now.  Third, in terms of embarrassment, the request is certainly not intended to cause any, and various pretrial



protections—for example, the Confidentiality Order and the Parties' eventual motions in limine—are in part designed to assure that I could not use the material to that end.  Finally, the proportionality concerns have already been considered because the files at issue correspond to disciplinary index entries which have only been produced to Plaintiff in the first instance because they have been identified for containing allegations of relevance to this case.

### III.     DAO Records

Plaintiffs have also requested DAO materials for substantiated CCRB and IAB files.  Defendants responded that they do not know what DAO is.  This is an incredible response, as it is well-known—and certainly to the New York City Corporation Counsel—that the NYPD's Department Advocate's Office ("DAO") is charged with responding to substantiated misconduct findings and taking corresponding disciplinary action.  See Floyd, 959 F. Supp.2d at 618.  The value of the DAO records cannot be overstated as they correspond to substantiated force or prisoner injury cases against the Defendants for obvious reasons.  Not least among these is the possibility that Plaintiffs may be able to argue that an OATH-issued or plea-derived findings and sanctions—or the absence of DAO action in response to IAB or CCRB substantiated allegations—as placing the City Defendant on constructive notice for the purposes of Plaintiffs' Monell claims that certain Individual Defendants had problems keeping their hands to themselves such that the City Defendant proximately caused Plaintiffs' injuries here.  In addition, substantiated findings and DAO charge and sanction records may be admissible pursuant to FRE 404(b) on Plaintiffs' individual-liability claims.

### IV.     Performance Evaluations

With respect to Plaintiffs' request for Defendants' annual and/or probationary performance evaluations, Defendants apparently do not object to their production.  However, production has been strangely incomplete, leaving out certain date ranges which I have identified to Defense Counsel.  I note here only that the production of the omitted ranges remains outstanding.

### V.     Conclusion

In light of the foregoing, Plaintiffs respectfully request that the Court grant their motion to compel the production of the herein-described files and records.  Thank you for your time and consideration.



Sincerely,

*Lina M. Franco*

Lina Franco, Esq.